UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROSE GRIFFITH, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:11-CV-1440 |
| § | |
| WELLS FARGO BANK, N.A., § | |
| § | |
| Defendant. § | |

**OPINION AND ORDER**

Pending before the Court is Plaintiff Rose Griffith's motion for conditional certification pursuant to Section 216(b) of the Fair Labor Standards Act[1] ("FLSA") of a class consisting of herself and all similarly situated persons who worked as "loan processors" for Wells Fargo from April 11, 2008 until the present time. Doc. 24. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") contends that Griffith has failed to demonstrate the existence of a class of similarly situated employees and that her motion therefore should be denied. Doc. 36.

Having considered the motion and the record before the Court, the Court finds that Griffith has failed to demonstrate the existence of a class of similarly situated loan processors and her motion therefore is denied.

Background

This case arises out of purportedly unlawful overtime practices or policies instituted by Wells Fargo towards its loan processors in violation of Section 216(b) of the FLSA. Griffith filed this suit against Wells Fargo on behalf of herself and all similarly situated employees on April 15, 2011. Doc. 1. In her complaint, Griffith alleged that Wells Fargo followed a pattern or practice of requiring loan processors to perform "off the clock" work and failed to maintain

---

[1] 29 U.S.C. § 216(b).

accurate records of the number of hours that loan processors worked. *Id.* at 7.

After several months of discovery, Griffith filed a motion to conditionally certify a class consisting of all of Wells Fargo's loan processors nationwide. In support of that motion, Griffith submitted her own declaration and a transcript of her deposition, deposition testimony of Wells Fargo corporate representatives, job descriptions and postings, excerpts from Wells Fargo's "Team Member Handbook" and Houston area employment guidelines, and Griffith's employment records including time sheets, compensation summaries, and job evaluations. Docs. 24-1-20.

Wells Fargo has responded to Griffith's motion and opposed certification on numerous grounds, principally that Griffith has failed to demonstrate that other loan processors at Wells Fargo are similarly situated with respect to their job responsibilities and Wells Fargo's purportedly unlawful overtime practices. Doc. 36. In support, Wells Fargo has submitted numerous declarations by Wells Fargo loan processors, supervisors, and company executives. Docs. 38-1-15. After the Court granted Wells Fargo's motion to compel Griffith to complete her deposition (Doc. 51), Wells Fargo filed a supplemental response based on Griffith's subsequent deposition testimony (Doc. 69), Griffith filed a reply (Doc. 72), and the motion is now ripe for adjudication.

<u>Standard</u>

Section 216(b) of the FLSA permits an employee to bring an action "for and [on] behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to such an action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." *Id*. Thus, unlike a Fed. R. Civ. P. Rule 23 class action, a representative action under § 216(b) "follows an

'opt-in' rather than an 'opt-out' procedure." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995); s*ee also LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975). In *Hoffman-La Roche, Inc. v. Sperling*, the U.S. Supreme Court held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." 493 U.S. 165, 169 (1989).

The Fifth Circuit has approved the use of the two-stage class certification process set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987). *See Mooney*, 54 F.3d at 1213. The two-stage process consists of a "notice" stage followed by a "decertification" stage. *Mooney*, 54 F.3d at 1213–14. During the "notice" stage, the Court determines whether notice of the action should be given to potential class members. *Id*. Since the evidence available is limited, the standard applied is a lenient one, usually resulting in "conditional certification" of a representative class, to whom notice is sent and who receive an opportunity to "opt-in." *Id*. at 1214.

Generally, after the close of discovery, the defendant initiates the second stage by filing a motion for "decertification." *Id*. At this stage, the Court makes a factual determination from discovery evidence of whether the plaintiffs are "similarly situated." *Id*. If the Court finds that the plaintiffs are "similarly situated," then the case proceeds as a representative action. *Id*. If the Court finds that the plaintiffs are not "similarly situated," then the class is decertified, the "opt-in" plaintiffs are dismissed without prejudice, and the original plaintiffs proceed to trial on their individual claims. *Id*.

Analysis

When determining whether the putative class comprises employees who are "similarly situated" to the named plaintiff, the Court determines "whether there are other employees 'who

are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Villatoro v. Kim Son Restaurant, L.P.*, 286 F.Supp.2d 807, 810 (S.D.Tex. 2003) (quoting *Dybach v. Fl. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). Thus, while a group of employees may be similarly situated with regard to their positions and responsibilities, they are dissimilar for the purposes of FLSA class treatment if the named plaintiff fails adequately to allege that their employer subjects them to uniform pay practices or policies. That is the case here.[2]

Griffith contends that Wells Fargo violated FLSA by failing to pay its loan processors for overtime work performed. Specifically, Griffith argues that, although Wells Fargo had a written, company-wide policy requiring employees to record their time accurately and stating that it paid employees for all overtime, unwritten policies and the realities of loan processors' work-loads resulted in employees frequently working over-time hours for which Wells Fargo did not compensate them.

Wells Fargo responds that Griffith has failed adequately to demonstrate the existence of any official company policy or practice of denying overtime pay and that the resolution of Griffith's claims requires highly individualized inquiries into the circumstances of each individual's alleged off-the-clock work. The Court agrees. For the reasons detailed below, Griffith has failed to demonstrate the existence of a company-wide policy or practice denying loan processors compensation for overtime work. Griffith therefore has failed to show that the putative class members are similarly situated for the purposes of conditional certification.[3]

---

[2] Wells Fargo devotes a small portion of its response to the issue of whether the many loan processors at its loan processing facilities are "similarly situated" with regard to their positions, responsibilities, and functions. *See* Doc. 36 at 18-20. It appears to the Court that Griffith has made an adequate showing that Wells Fargo's loan processors are similarly situated in this regard, but because Griffith clearly has failed to demonstrate the existence of a nation-wide common policy or practice regarding pay provisions, whether Wells Fargo's loan processors are "similarly situated" with regard to position or function is of no consequence.

[3] Wells Fargo contends that the Court should apply a heightened standard because the parties have had the

Griffith advances three arguments to demonstrate the existence of a class similarly situated with regard to pay: 1) the time-keeping software Wells Fargo uses did not allow loan processors to input their actual work schedule and prevented them from logging all over time hours worked; 2) the work load for loan processors is too high to be performed within forty hours, yet Wells Fargo discourages employees from recording overtime, and 3) Wells Fargo did not include overtime when calculating non-discretionary bonuses. The Court addresses each argument in turn.

<u>Wells Fargo's Use of Time Keeping Software</u>

The parties agree that Wells Fargo uses time-keeping software to track its employees work-hours. Until January 2, 2011, Wells Fargo used a timekeeping software application called WebTime. *See* Doc. 24 at 22, Doc. 36 at 37. Since that time, Wells Fargo has used a similar application called Time Tracker. *Id.* Griffith contends that Wells Fargo's use of the applications for all loan processors indicates a uniform practice or policy of a FLSA overtime violation because the applications did not accurately track employees' work hours, did not allow employees to log overtime work performed at home, and would not allow employees to input more than a limited amount of overtime hours. Griffith's arguments are flatly contradicted by the evidence before the Court.

Griffith argues that the time-keeping applications "did not operate as a 'traditional' time clock where employees punched in and out . . . ensuring the accuracy of timecards at the work place;" instead, "loan processors entered their hours all at one time, either at the beginning or end of each work week." Doc. 24 at 22. Additionally, the software "typically defaulted to [employees'] scheduled hours rather than their actual hours worked to complete their timecard

---

opportunity to conduct months of discovery. Doc. 36 at 31. The Court declines to apply a higher standard and proceeds instead under the lenient standard typically applied at the first stage of the *Lusardi* analysis.

information." *Id.* However, the deposition testimony of Wells Fargo employee Teresa Swanson, who managed the time-keeping applications for the company, indicates that Wells Fargo in fact encouraged or required its employees to complete their schedules in the time-keeping software on a daily basis. *See* Doc. 24-4 at 3.[4] Wells Fargo has introduced additional testimony of loan processors who did, in fact, input their hours each day. *See* Docs. 38-1, -2, -3, -5, -6, -8,. -9, & -15. Additionally, whether these programs "pre-populate" an employee's hours with scheduled hours, nothing indicates that employees cannot adjust these times accurately to reflect hours actually worked.[5] In fact, Wells Fargo has introduced substantial evidence that many of its employees make efforts to record the hours they actually work accurately, including lunch breaks. Docs. 38-2, 38-3, 38-6.

Additionally, and contrary to Griffith's unsupported assertion that the time-keeping software "has no mechanism in place to capture time spent by loan processors while working at home" (Doc. 24 at 23), the record before the Court indicates that Wells Fargo required its employees to record all the hours they worked, whether in the office or at home. Doc. 45-2 at 15-16. While it appears that Wells Fargo is in the process of introducing a new feature to enable employees to "label" the hours worked outside the office so that managers or supervisors clearly can see what *type* of work their employees are performing, nothing indicates that Wells Fargo prohibits or discourages its employees from recording work performed at home, nor that it did so at any time during Griffith's employment.

Finally, Griffith grossly mischaracterizes Swanson's testimony when she contends that

---

[4] In response to Griffith's attorney's question " . . . it is a system whereby at the end of the week, time could be put into Web Time that's based on the employee's schedule, correct?" Swanson responded: "It could be. That's not how it's supposed to be used. It's supposed to be daily entry into Web Time and Time Tracker of your work." Doc. 24-4 at 3.

[5] Wells Fargo has introduced deposition testimony of at least one loan processor who states that her time-sheets were not "pre-populated" with scheduled hours. Doc. 38-6 at 5.

employees were unable to record more than fourteen hours per work day. Contrary to Griffith's contention that "WebTime would generate an error message and prevent an employee from logging more than 14 or more hours in a work, day," (Doc. 24 at 23), Swanson stated that the program would generate a "warning" to encourage employees to "take a look at this situation on your time card . . . to make sure that it's accurate." Doc. 24-4 at 7. Swanson explicitly stated that the warning was "not a hard stop" and that employees still were able accurately to record their work hours. *Id.* Nothing before the Court supports Griffith's argument that Wells Fargo's use of time-keeping software constituted or contributed to a violation of FLSA.

    High Work Load and Limitations on Overtime

    Griffith contends that "Wells Fargo systematically violated the FLSA with respect to its loan processors through . . . limiting the amount of overtime that processors were allowed to record on their timesheets . . . [while assigning loan processors] job duties . . . [that] could not reasonably be performed within the forty hours per week shift for which most loan processors were scheduled to work." Doc. 24 at 24. Griffith calls this a "Catch 22: processors were assigned more work than could be performed in forty hours, but were discouraged or prohibited from submitting overtime that would reflect the true time taken to perform this work. Because of this problem, "loan processors are forced to come in early, stay late, work through lunch, and take work home without recording the hours that exceed the pre-approved amount of overtime." *Id.* at 25.

    As the Court previously discussed, Wells Fargo's official and published policy is that employees record all hours worked. *See* Doc. 59 at 11 ("[Y]ou must report *all* hours worked."). The time-keeping software that Wells Fargo uses to track loan processors' working hours does, contrary to Griffith's assertion, permit employees to record hours worked at home and during

lunch breaks and Wells Fargo requires loan processors to do so. *Id.* To the extent that there is a "Catch-22," it must be the product of unofficial limitations.

Griffith contends that this unofficial policy exists in the "pressure" felt by loan processors who are overburdened by excessive demands. "The loan processors at Wells Fargo must manage a high number of loans in their pipeline without recording more overtime hours than pre-approved by Wells Fargo." Doc. 24 at 25. To maximize efficiency, Wells Fargo sets budgets for each loan processing center and "cost per loan" targets. *Id.* at 26. "Site leaders are evaluated on whether they adhere to their budgets" and "[c]onsistently going over the cost per loan threshold could lead to disciplinary action against the site leader and . . . the loan processor." *Id.* Additionally, staying within overtime budgets "is so critical that it is even a component of the loan processor's annual job evaluation." *Id.* at 27. To achieve these goals, loan processors must obtain approval from their supervisors before performing overtime work. *Id.*

Essentially, Griffith's argument is that loan processors are under so much pressure to perform efficiently that they feel compelled to work overtime without seeking compensation for any additional hours. The record before the Court, however, indicates that Wells Fargo requires loan processors to report all overtime hours and automatically pays the hours that loan processors report through the time-keeping software. Docs. 59 at 11, 24-4 at 3. The "pressure" that loan processors feel therefore is based on the loan processors' individual ability to perform efficiently, subjective impression of the degree of pressure to which they are subjected, and office-specific experiences relating to the actions of office or division supervisors. Although it may be the case that Griffith felt pressure to perform uncompensated overtime work, there is no indication that loan processors nationwide felt a similar pressure. Addressing similar circumstances, Judge Atlas found "the fact that [employees] were supposed to get pre-approval to work overtime does not

mean that overtime was barred for work that supervisors believe was necessary." *Richardson v. Wells Fargo Bank*, 2012 WL 334038, at *6 (S.D.Tex. Feb 2, 2012). Similarly, in the event that loan processors did work unapproved overtime, the record indicates that they easily could input these hours through record keeping software and that they *automatically* would be paid for such work, whether or not a supervisor pre-approved the work. Doc. 24-4 at 3.

While it may be the case that Wells Fargo uniformly expects efficiency from its loan processors, nothing before the Court suggests that loan processors are subject to a uniform, or even a similar, policy of unlawful pressure against overtime reporting.

Overtime Payment on Non-Discretionary Bonuses

Finally, Griffith contends that Wells Fargo maintains an unlawful, company-wide practice of not paying overtime on non-discretionary bonuses. FLSA, as interpreted by the United States Department of Labor Wage and Hour Division, requires employers to pay overtime on all "individual or group production bonuses, [and] bonuses for quality and accuracy of work." 29 C.F.R. § 778.209(a). Wells Fargo does not dispute that they are required to include nondiscretionary bonus payments but maintains that Wells Fargo paid Griffith an overtime amount of 1.5 times the bonus per hour amount for all overtime hours worked during the bonus period. Docs. 36 at 48, Doc. 44 at 5-6. Wells Fargo maintains that it is its policy to calculate and include the lawful overtime amount for every non-discretionary bonus it pays to its loan processors. Doc. 36 at 48. Griffith did not respond to Wells Fargo's showing and nothing in the record supports her assertion that Wells Fargo fails to pay overtime on nondiscretionary bonuses either to her or to a purported class of similarly situated loan processors.

Conclusion

As the foregoing discussion illustrates, Griffith has failed to meet her burden of

demonstrating the existence of a class of similarly situated loan processors. The Court therefore **ORDERS** that Plaintiff Rose Griffith's motion for conditional certification (Doc. 24) is DENIED.

SIGNED at Houston, Texas, this 12th day of September, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE